UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TARIE HASSAN,

        Plaintiff,                  Case No. 2:14-cv-14407
                                       Judge Robert H. Cleland
v.                                   Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

**REPORT AND RECOMMENDATION REGARDING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT (DE 14), PLAINTIFF'S
AMENDED MOTION FOR SUMMARY JUDGMENT (DE 15) and
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DE 16)**

**I.**     **RECOMMENDATION**: For the reasons that follow, it is

**RECOMMENDED** that the Court **DEEM MOOT** Plaintiff's motion for summary

judgment (DE 14), **DENY** Plaintiff's amended motion for summary judgment (DE

15), **GRANT** Defendant's motion for summary judgment (DE 16), and **AFFIRM**

the Commissioner's decision.

**II.**    **REPORT**

       Plaintiff, Tarie Hassan, brings this action under 42 U.S.C. § 405(g) for

review of a final decision of the Commissioner of Social Security

("Commissioner") denying his application for disability insurance (DI) benefits.

This matter is before the United States Magistrate Judge for a Report and

1

Recommendation on Plaintiff's motion for summary judgment (DE 14), Plaintiff's amended motion for summary judgment (DE 15), the Commissioner's cross motion for summary judgment (DE 16), Plaintiff's reply (DE 18) and the administrative record (DE 12).

### A.     Background

Plaintiff filed his application for DI benefits on March 28, 2012, alleging that he has been disabled since April 1, 2010, at age 51.  (R. at 128-131, 151-153.) Plaintiff alleges disability as a result of problems with his back and knees, numbness in his back and legs, pain in his legs due to his back, arthritis in his joints and depression.  (R. at 154-160.)  Plaintiff's applications were denied.  (R. at 58-68, 69, 70, 71, 72-76.)

Plaintiff sought a *de novo* hearing before an Administrative Law Judge ("ALJ").  R. at 77-78.  ALJ B. Lloyd Blair held a hearing on April 30, 2013, at which Plaintiff was represented by counsel and Vocational Expert (VE) Melody Henry testified.  (R. at 36-57.)  On June 5, 2013, ALJ Blair determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 18-35.)

Plaintiff requested review of the hearing decision.  (R. at 15-17.)  On September 17, 2014, the Appeals Council denied Plaintiff's request for review.  (R. at 1-5.)  Thus, ALJ Blair's decision became the Commissioner's final decision.

Plaintiff then timely commenced the instant action on November 17, 2014.
(DE 1.)

**B.      Plaintiff's Medical History**

In this case, Plaintiff alleges that he has been disabled since April 1, 2010.
(*See* R. at 128, 151.)  Plaintiff's medical records that were available to the ALJ
span the period from February 1, 2011 to March 28, 2013.  R. at 210-234 (Exhibits
1F-8F).  Following ALJ Blair's June 5, 2013 decision, the Appeals Council was
provided with the September 25, 2013 note of Wassim M. Younes, M.D.  (R. at 7.)

**1.      Orthopedic History**

Of particular import here are the records of Dr. Younes, Plaintiff's treating
physician.  Plaintiff saw Dr. Younes on February 1, 2011 (R. at 214-215) and had
x-rays of the lumbar spine and left knee (R. at 213).  The lumbar spine x-ray
revealed "mild degenerative changes especially upper portion, otherwise negative."
(R. at 213.)  Plaintiff again saw Dr. Younes on February 28, 2011.  (R. at 210-211)
A right knee x-ray on the same date revealed "suggestion of minimal narrowing of
joint space in the medial compartment.  The right knee as visualized otherwise
appears intact."  (R. at 212).

More than one year later, on March 29, 2012, Plaintiff saw Dr. Younes (R. at
216-217) and lab tests were performed (R. at 218-219).  Among other things, Dr.
Younes assessed generalized osteoarthorsis involving multiple sites.  (R. at 216.)

Nearly one year following that diagnosis, on March 28, 2013, Dr. Younes performed a physical capacities evaluation, concluding that Plaintiff would be unable to work on a regular sustained basis for 1-2 days per week.  (R. at 232-234.)

On September 25, 2013 – a record which post-dates the ALJ's hearing but was available to the Appeals Council – Dr. Younes noted that Plaintiff has multiple joint osteoarthrosis (Code 715.09) and chronic pain (Code 338.4) which "has impaired and continues to impair his ability to work with a permanent disability[.]" (R. at 7.)

### 2.     Psychiatric History

On May 25, 2012, Plaintiff was seen at the Jefferson Medical Industrial Clinic for an adult mental status evaluation by John Jeter, M.A., L.L.P., L.M.S.W. and Hugh Bray, Ph.D., L.P., who addressed their findings to the State of Michigan Department of Human Services Disability Determination Service for Social Security Claims.  The diagnostic analysis included adjustment disorder with depressed mood and a Global Assessment of Functioning (GAF) score of 58.  (*See* R. at 224-227.)  Later that year, on September 13, 2012, Plaintiff underwent a psychiatric evaluation by Madhu Mendiratta, M.D. at Northwestern Psychiatric & Counseling Center and was diagnosed with major depressive affective disorder (Code 296.32).  Dr. Mendiratta prescribed Celexa and Ativan.  (R. at 228-231.)

### C.     Hearing Testimony (April 30, 2013)

### 1.      Plaintiff's Testimony

Plaintiff Tarie Hassan testified at the April 30, 2013 hearing.  (R. at 40-52.)
At that time, he was 54 years old, 5'10" tall and 220 pounds.  He is right-handed
and completed 2 years in college.  He has a driver's license but does not drive.  (R.
at 41.)  He does not smoke.  He is separated and lives in a multi-story home with
his daughter.  (R. at 47.)  His daughter does the cleaning, and his son does the yard
work.  (R. at 49.)

Plaintiff testified that he gets out of bed around 10 a.m. or 11 a.m. and
usually goes to bed at 8 p.m. or 10 p.m.  (R. at 48.)  He experiences difficulties or
pain bathing and getting dressed.  (R. at 50.)  During the day, he mostly lies down,
trying to avoid pain, as lying down is his most comfortable position.  (R. at 48, 50.)
He watches television, but cannot concentrate long enough to watch an hour long
show and understand it.  (R. at 50.)  It is very difficult to climb stairs, and it hurts a
lot to bend over to pick something off of the floor.  (R. at 48.)  He can stand around
5 to 10 minutes before having to sit down, can sit for about half an hour before
having to get up, and can walk about half a block before having to stop.  (R. at 49.)

Plaintiff testified that he has very severe arthritis, as well as constant lower
back pain, and problems with his knees, elbows and sometimes fingers.  (R. at 42,
42-45, 51.)  He also testified about psychiatric treatment.  (R. at 46, 50.)  He only
went to therapy once, because he ran out of money and could not afford it.  He

does not have insurance and has not had insurance since he stopped working.  (R. at 51.)

### 2.    Vocational Expert Testimony

VE Melody Henry also testified.  (R. at 52-56.)  Ms. Henry was asked to assume a hypothetical individual who:  can meet the demands of light work but should never use ladders, scaffolds, or ropes; can frequently, but not constantly handle and finger; should only occasionally bend, twist, or turn at the waist; should do no foot pedal usage; should only have simple, skilled work with a specific vocational preparation (SVP) of 1 or 2; should only perform work involved with just one, two, three step instructions; should not have a job involving concentration on detail or precision tasks, multitasking, reading, computing, calculating, or problem solving; and should have work requiring only brief or superficial contact with the general public.  She testified that such an individual could not perform Plaintiff's past relevant work.  (R. at 53.)  However, Ms. Henry further testified that such a hypothetical person with Plaintiff's profile could perform light and unskilled work such as an office machine operator, a mail clerk or a record's clerk. (R. at 53-54.)

Upon examination by Plaintiff's counsel, the VE testified that being off-task at least 15 percent of the time, or being unable to be at work or be on time for work at least two times a month, would preclude all work.  (R. at 54-55.)  The VE

further testified that if Plaintiff was restricted to lifting less than 10 pounds, it would preclude the mail clerk and records clerk jobs.  (R. at 55.)  Moreover, if Plaintiff was not able to walk and stand more than an hour or two per day, it would preclude the office machine operator and mail clerk jobs.  (R. at 55-56.)

**D.    The Administrative Decision**[1]

ALJ Blair rendered his decision on June 5, 2013.  (R. at 18-35.)  At Step 1, the ALJ found that Plaintiff has not engaged in substantial gainful activity since April 1, 2010, the alleged onset date.  (R. at 23.)

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. §404.1520(a)(4).  Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1.    Is the claimant engaged in substantial gainful activity?
2.    Does the claimant suffer from one or more severe impairments?
3.    Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4.    Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5.    Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

At Step 2, the ALJ found that Plaintiff has the severe impairments of low back pain, knee pain, elbow and finger pain, and adjustment disorder with depressed mood.  (R. at 23.)

At Step 3, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.  (R. at 23-25.)

At Step 4, the ALJ concluded that Plaintiff has the residual functional capacity (RFC) to:  perform light work, except that he can never use ladders, scaffolds, or ropes; can frequently but not constantly handle and finger; can only occasionally bend, twist, and turn at the waist; no foot pedal usage; requires simple unskilled work with an SVP rating of 1 or 2; work involving one, two, or three-step instructions; no jobs involving concentration on detailed or precision tasks or multi-tasking, reading, computing/calculating, or problem solving; and work requiring only brief and superficial contact with the public.  (R. at 25-29.) Furthermore, the ALJ concluded that Plaintiff is unable to perform any past relevant work.  (R. at 29.)

At Step 5, considering Plaintiff's age, education, work experience and RFC, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (R. at 29-30.)

**E.    Standard of Review**

8

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384,

9

395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487

(1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this

Court defers to that finding 'even if there is substantial evidence in the record that

would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*,

581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a

decision of the Commissioner will not be upheld where the SSA fails to follow its

own regulations and where that error prejudices a claimant on the merits or

deprives the claimant of a substantial right.'"  *Rabbers*, 582 F.3d at 651 (quoting

*Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### F.    Analysis

In his amended motion for summary judgment, as well as his reply to

Defendant's dispositive motion, Plaintiff sets forth four (4) statements of error:

I.    The ALJ failed to comply with controlling Sixth Circuit caselaw in
essentially rejecting the opinion of Dr. Younes, Mr. Hassan's treating
physician, without considering the regulatory factors as required and
without adequate explanation.

II.   The ALJ failed to comply with controlling law in evaluating Mr. Hassan's
subjective complaints and credibility.

III.  The Commissioner failed to sustain her burden of establishing that there is
other work in the national economy that Mr. Hassan could perform because
the vocational expert's testimony conflicts with the *Dictionary of
Occupational Titles* and because the ALJ relied on the VE's response to a
hypothetical question which failed to include all of the limitations
supported by the record.

IV.    The ALJ committed reversible error in failing to address Mr. Hassan's "borderline age" in his decision as required.

(DE 15 at 1, 7-23.)

The Commissioner opposes Plaintiff's motion, asserting that:  (a) substantial evidence supports the ALJ's RFC determination, (b) substantial evidence supports the ALJ's finding that Plaintiff could perform other work at Step 5, and (c) substantial evidence supports the ALJ's decision to apply Plaintiff's chronological age category under the circumstances of this case.  (DE 16 at 3, 6-19.)

Plaintiff has filed a reply.  (DE 18.)  The Undersigned will address each of the parties' arguments in turn.

## 1.    Substantial Evidence Supports the ALJ's Weighing of Opinion Evidence.

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case.  20 C.F.R. § 416.927(d).  The regulations define medical opinions as "statements from physicians . . . that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."  20 C.F.R. § 416.927(a)(2).  "Administrative law judges are not bound by any findings made by State agency medical or psychological consultants, or other program physicians or psychologists."  20 CFR §

11

404.1527(e)(2)(i).  The ALJ must, however, "consider findings and other opinions" of State Agency medical or psychological consultants.

The ALJ generally gives deference to the opinions of a treating source "since these are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone . . . ."  20 C.F.R. § 416.927(d)(2); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir. 2009).  To qualify as a treating source, the physician must have an "ongoing treatment relationship" with the claimant.  20 C.F.R. § 404.1502.

If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements.  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). [2]  Specifically, if an ALJ does not give a treating source's opinion controlling weight:

---

[2] An exception exists for treating source opinions on issues that are reserved to the Commissioner, which "are never entitled to controlling weight or special significance."  S.S.R. 96-5p, 61 FR 34471-0, at *34473.  Examples of issues reserved to the Commissioner include:

> 1. Whether an individual's impairment(s) meets or is equivalent in severity to the requirements of any impairment(s) in the listings;
> 2. What an individual's RFC is;
> 3. Whether an individual's RFC prevents him or her from doing past relevant work;

> [A]n ALJ must apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion.

*Id.*

Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] your treating source's opinion." 20 C.F.R. § 416.927(d)(2). Accordingly, the ALJ's reasoning "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Friend v. Comm'r of Soc. Sec.*, No. 09-3889, 2010 WL 1725066, at *7 (6th Cir. 2010) (internal quotation omitted). The United States Court of Appeals for the Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir.1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's

---

4. How the vocational factors of age, education, and work experience apply; and
5. Whether an individual is "disabled" under the Act.

*Id.*

13

application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32–33
(2d Cir. 2004).

*Wilson*, 378 F.3d at 544–45. Thus, the reason-giving requirement is "particularly

important when the treating physician has diagnosed the claimant as disabled."

*Germany-Johnson v. Comm'r of Soc. Sec.*, 312 F. A'ppx 771, 777 (6th Cir. 2008)

(citing *Rogers*, 486 F.3d at 242).

At Step 4, ALJ Blair expressly considered and weighed opinion evidence.

In so doing, he assigned no more than modest weight to Dr. Younes's March 29,

2012 and March 28, 2013 opinions (R. at 217, 232-234) and limited weight to the

May 25, 2012 opinion of Jeter and Bray; however, he assigned significant weight

to their assigned GAF score of the same date (R. at 226-227) and significant

weight to the May 7, 2012 opinion of Muhammad Khalid, M.D. (R. at 65-66).

(*See* R. at 28-29.) Ultimately, the ALJ concluded that Plaintiff has the residual

functional capacity (RFC) to:

> perform light work . . . except that he can never use ladders, scaffolds,
> or ropes; can frequently but not constantly handle and finger; can only
> occasionally bend, twist, and turn at the waist; no foot pedal usage;
> requires simple unskilled work with an SVP rating of 1 or 2; work
> involving one-, two-, or three-step instructions; no jobs involving
> concentration on detailed or precision tasks or multi-tasking, reading,
> computing/calculating, or problem solving; and work requiring only
> brief and superficial contact with the public.

(R. at 25-29.)

In the motion at bar, Plaintiff contends that the ALJ improperly rejected the opinion of treating physician Dr. Younes by not considering the regulatory factors as required, and by not providing adequate explanation.  (DE 15 at 7-12.) Specifically, Plaintiff points to Dr. Younes's March 28, 2013 Physical Capacities Evaluation.  (R. at 232-234.)  Here, Dr. Younes opined that:  (1) Plaintiff can sit for 5 hours in an 8 hour workday and can stand and/or walk for 5 hours in an 8 hour workday; (2) Plaintiff's spinal impairment, knee stiffness/cramping, pain, knee swelling and knee pain interfere with Plaintiff's ability to sit; and (3) Plaintiff can frequently lift up to 5 pounds and occasionally lift from 6 to 10 pounds.  (R. at 232.)  Dr. Younes further opined that Plaintiff could not use his feet for repetitive movements as in pushing and pulling of leg controls.  Further, assuming Plaintiff returned to repetitive work activity allowing for a sit-stand opinion, he would minimally require one 20 minute rest period per hour, in addition to a 30 minute lunch.  (R. at 233.)  Finally, Dr. Younes opined that Plaintiff would be unable to work on a regular, sustained basis 1-2 days per week.  (R. at 234.)

Plaintiff argues that the limitations set by Dr. Younes would preclude Plaintiff from performing light work.  (DE 15 at 7; *see also*, DE 15 at 11.) However, the Court should conclude that the ALJ did provide "good reasons" for rejecting the lifting, sitting, standing and walking limitations assessed by Dr. Younes:

### a.    Lifting

As Plaintiff points out, Dr. Younes's March 29, 2012 notes place a "restriction on lifting [weight] more than ten pounds due to exacerbation of symptoms[,]" and the March 28, 2013 notes indicate Plaintiff can frequently lift up to 5 pounds and occasionally lift from 6-10 pounds.  (DE 15 at 7, 11, 217, 232-234.)  Yet, the ALJ's RFC assessment includes the limitation of "light work," which involves ". . . lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 CFR § 404.1567(b), 20 C.F.R. § 416.967(b).  (R. at 25.)[3]

At Step 4, the ALJ acknowledged both the March 29, 2012 and March 28, 2013 assessments by Dr. Younes.  (R. at 28.)  Among other things, ALJ Blair stated:

> First, Dr. Younes has only seen the claimant three times[4] over the
> last three years.  Thus, he has not enjoyed the frequency and contact

---

[3] "Light work" involves:  ". . . *lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.* Even though the weight lifted may be very little, a job is in this category when it *requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.* To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."  20 CFR § 404.1567(b), 20 C.F.R. § 416.967(b) (emphasis added).

[4] In referencing three visits, the ALJ presumably considered progress notes dated February 1, 2011 (R. at 214-215), February 28, 2011 (R. at 210-211) and March

16

of duration with the claimant that would allow him to make an
accurate assessment of the claimant's functional abilities.[5]

Secondly, several of his opinions are not well supported by the
objective evidence.  There is no compelling evidence showing that the
claimant cannot lift more than 10 pounds . . . . there are no limitations
on pushing or pulling (other than the weight limitations inherent in
light work) given the lack of findings of diminished strength and the
limited abnormal findings on x-ray images.[6]

(R. at 28.)  Thus, when assigning Dr. Younes's opinions no more than modest

weight, the ALJ considered the examining relationship, treatment relationship and

supportability factors.  *See* 20 C.F.R. §§ 404.1527 and 416.927 ("Evaluating

opinion evidence.").

Instead, the ALJ assigned significant weight to the May 8, 2012 physical

RFC assessment of Muhammad Khalid, M.D. - who rated Plaintiff's postural

limitations as "occasionally," and assessed Plaintiff for a light RFC finding - on the

basis that Dr. Khalid's assessment was generally supported by the objective

evidence, such as the knee and lumbar spine x-rays and the physical examination

findings (presumably Dr. Younes's March 29, 2012 progress notes), upon which

Dr. Khalid relied.  (*See* R. at 27, 29, 65-66, 212-213, 216-217.).  Although not

_____

29, 2012 (R. at 216-217) but not the "physical capacities evaluation" dated March
28, 2013 (R. at 232-234).

[5] As Plaintiff suggests in reply, this is a period of two years.  (DE 18 at 3.)

[6] Here, the Court suspects the ALJ was referring to Dr. Younes's February 28, 2011
and March 29, 2012 musculoskeletal examinations and the February 2011 x-rays.
(*See* R. at 210, 212-213, 216.)

expressly cited by the ALJ, Dr. Khalid also opined that Plaintiff can occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds – limitations which are consistent with the definition of "light work."  20 CFR § 404.1567(b), 20 C.F.R. § 416.967(b).  (R. at 65-66.)

### b.      Sitting, Standing and/or Walking

Dr. Younes's February 1, 2011, February 28, 2011 notes, and March 29, 2012 notes each mention some type of decreased range of motion, with respect to either the lumbar spine, knees, or rotation.  (R. at 214, 210 and 216.)  Plaintiff argues that Dr. Younes's limited knee range of motion finding "also supports a finding that he is limited to standing and walking and being on his feet for [no] more than five hours during an 8-hour workday."  (DE 15 at 11.)

To be sure, Dr. Younes's February 28, 2011 notes indicate that Plaintiff was unable to perform chores and activities of daily living and has significant pain, and Plaintiff's musculoskeletal examination revealed decreased range of motion in the lumbar spine, paraspinal muscle tenderness, crepitus in both knees, and low back pain with straight leg raising.  (R. at 210.)  Also, on March 28, 2012, Social Security Interviewer K. Makki observed that Plaintiff:  "seemed very quiet and reserved.  He walked slow and somewhat with a limp.  Had to shift and adjust his seated position due to his back pain, had to stand up seve[r]al times during interview.  He had to use counter for support to stand up due to his knees and

18

back[.]"  (R. at 151-153)  Furthermore, the opening paragraph of the May 25, 2012 Jeter/Bray adult mental status evaluation  states:  "The claimant's gait is slow and awkward.  He leans on items for support."  (R. at 224-227.)

However, in addition to the aforementioned reports of decreased range of motion, the ALJ also relied upon Dr. Mendiratta's September 13, 2012 mental status examination, in which she observed that Plaintiff's posture was unremarkable and his gait was normal.  (R. at 27, 230.).  Furthermore, the ALJ noted that "the objective findings on imaging studies have been out of proportion to his alleged pain."  (R. at 27.)   For example, the February 28, 2011 right knee x-ray suggested "*minimal* narrowing of joint space in the medial compartment[,]" the February 1, 2011 the lumbar spine x-ray revealed "*mild* degenerative changes especially upper portion," and the February 1, 2011 left knee x-ray was *negative*. (R. at 212-213.) (emphasis added).

### c.    Regulatory factors

Plaintiff alleges that the ALJ failed to consider the regulatory factors required by 20 C.F.R. §§ 404.1527 and 416.927 ("Evaluating opinion evidence."). (DE 15 at 12.)  These factors include examining relationship, treatment relationship, supportability, consistency, specialization and other factors.  *See* 20 C.F.R. §§ 404.1527(c) and 416.927(c).

To be sure, Plaintiff contends that Dr. Younes's three visits "certainly placed him in a better position to evaluate Mr. Hassan than the State Agency non-examining medical consultant, who never saw him at all, and upon whose opinion the ALJ substantially relied in assessing Mr. Hassan's RFC." (DE 15 at 10.) However, with regard to the factor "length of the treatment relationship and the frequency of examination," the regulations counsel: "Generally, *the longer a treating source has treated you and the more times* you have been seen by a treating source, the more weight we will give to the source's medical opinion. When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source." 20 C.F.R. §§ 404.1527(c)(2)(i), 416.927(c)(2)(i) (emphasis added). Thus, it is permissible for the ALJ to observe that "in over three years, [Plaintiff] has had treatment on only three occasions with his primary care physician." (R. at 27.) Moreover, citing the February 1, 2011, February 28, 2011 and March 29, 2012 notes, the ALJ stated: "Dr. Younes simply offered prescriptions for pain medications Celebrex and Tylenol #3 as well as Valium[.]" (R. at 27, 210-214, 216-217.) This is further evidence that the ALJ considered the factor of treatment relationship. Also, the ALJ accurately stated that "several of his opinions are not well supported by the objective evidence." At the same time, the ALJ specifically

referred to Dr. Younes's findings of limited range of motion of the knees when restricting Plaintiff's RFC "against the usage of foot pedals."  (R. at 28.)  Thus, the ALJ gave credit to Dr. Younes's findings where he found them consistent and supportable.

The ALJ did consider some of the factors.  Moreover, "[a]lthough the regulations instruct an ALJ to consider these factors, they expressly require only that the ALJ's decision include 'good reasons ... for the weight ... give[n] [to the] treating source's opinion'—not an exhaustive factor-by-factor analysis. *Id.* § 404.1527(d)(2)." *Francis v. Commissioner of Social Security*, 414 F.App'x 802, 804 (6th Cir. 2011).  As outlined above, the ALJ provided good reasons for rejecting the lifting, sitting, standing and walking limitations imposed by Dr. Younes.  As such, any omission by the ALJ of express discussion of one of these factors is not, alone, reversible error.  Furthermore,, the ALJ is not required to adopt Dr. Younes's March 28, 2013 opinion that Plaintiff would be unable to work on a regular sustained basis 1-2 days per week (*see* R. at 232-234).  "[T]o require the ALJ to base her RFC finding on a physician's opinion, 'would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is

disabled.'"  *Rudd*, 531 F.App'x at 728 (quoting SSR 96-5p, 1996 WL 374183 (July

2, 1996)).

### 2.      Any failure to fully comply with SSR 96-7p was harmless.

Dr. Younes's February 28, 2011 progress notes reflect that Plaintiff has

ongoing severe lower back pain, bilateral knee pain, is unable to do his chores and

activities of daily living, and experiences significant pain.  (R. at 210.)  Also, Dr.

Younes's March 28, 2013 evaluation reflects that Plaintiff's pain interferes with

his ability to sit.  (R. at 232).  Furthermore, at the April 30, 2013 hearing, Plaintiff

testified about his pain and stated that his most comfortable position is lying down.

(R. at 50.)

At Step 4, after expressly discussion Plaintiff's disability report and

Plaintiff's hearing testimony, the ALJ did not consider Plaintiff's allegations fully

credible, because "they are not well supported by the treatment history."  (R. at 26-

27, 154-160, 18-35.)  Specifically:

- noting the lack of medical records for the approximate 10 month period between the April 1, 2010 date of onset and the February 1, 2011 visit with Dr. Younes, the ALJ remarked, "[t]he delay in seeking treatment tends to suggest that his impairments were not so bothersome as to preclude work activity;"

- referencing the February 1, 2011, February 28, 2011 and March 29, 2012 visits with Dr. Younes, the ALJ observed:  "in over three years, he has had treatment on only three occasions with his primary care physician[,]" with resulting prescriptions

including Celebrex, Tylenol/Codeine #3, and Valium.  (R. at 210, 214, 216-217);[7]

- observing that Plaintiff has not had evaluations or care with specialists, such as neurologists or orthopedists, and, presumably referring to Dr. Mendiratta's September 13, 2012 psychiatric evaluation, noting that Plaintiff "has had only one treatment encounter with a psychiatrist[.]"  (R. at 228-231); and,

- observing that Plaintiff "has not had any urgent care or emergency room encounters for his purportedly severe symptoms."

(R. at 27.)  Overall, the ALJ permissibly noted that, "the lack of consistent, ongoing treatment coupled with the conservative nature of his treatment (versus specialized or urgent medical intervention) suggests that the claimant's symptoms and related limitations are not as severe as alleged." (R. at 27.)

Here, Plaintiff asserts that the ALJ did not comply with SSR 96-7p ("Assessing The Credibility Of An Individual's Statements") (July 2, 1996).  (DE 15 at 10.)  In pertinent part, this regulation provides that, "the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek

_____

[7] I also note that, on March 29, 2012, Dr. Younes prescribed Restoril for insomnia. (R. at 217.)

medical treatment." *Id*. For example, "[t]he individual may be unable to afford treatment and may not have access to free or low-cost medical services." *Id*.

The administrative record offers a possible explanation for the dearth of medical records. Plaintiff testified that he went to physical therapy once for his lower back, but it was expensive and he could not go again. (R. at 42.) When asked why he only once went to psychiatric / psychological therapy, he explained that he ran out of money and could not afford it. He further testified that he did not have any insurance and has not had any insurance since he stopped working. (R. at 50-51.) In addition, Dr. Younes's February 28, 2011 notes indicate he wrote off the visit, because Plaintiff could not pay. (R. at 210.) Likewise, Dr. Younes's March 29, 2012 notes indicate that Plaintiff had not done physical therapy, because he has not had insurance. (R. at 216.) Stated otherwise, Plaintiff "declines PT at this time due to financial reasons." (R. at 217.)

It is Plaintiff's position that the ALJ "failed to comply with SSR 96-7p by not inquiring of this issue during the [April 30, 2013] hearing as required, prior to using the failure to obtain treatment as a basis to discredit Mr. Hassan's testimony [in the June 5, 2013 decision]." (DE 15 at 13.) Furthermore, based upon Plaintiff's April 30, 2013 testimony that he sees psychiatrist Madhu Mendiratta, M.D. every month, and apparently referring to the fact that only Dr. Mendiratta's

24

September 13, 2012 psychiatric evaluation is part of the administrative record, Plaintiff suspects that the record is incomplete.  (R. at 46, 228-231; DE 15 at 13.)

However, even if the ten-month gap in treatment and the limited amount of visits to Dr. Younes or other physicians was due to Plaintiff's lack of insurance or indigency, "it does not alter the fact that the doctor was not privy to the more thorough longitudinal information and data that a more significant relationship would yield."  (DE 16 at 11.)  As the Commissioner notes, "any error is harmless since the ALJ also relied on the available objective evidence and medical opinions . . . ."  (DE 16 at 13; *see also*, *Ulman v. Commissioner of Social Security*, 693 F.3d 709, 714 (6th Cir. 2012) ("'[s]o long as there remains substantial evidence supporting the ALJ's conclusions on credibility and the error does not negate the validity of the ALJ's ultimate credibility conclusion, such is deemed harmless and does not warrant reversal.'") (quoting *Carmickle v. Commissioner of Social Security*, 533 F.3d 1155, 1162 (9th Cir. 2008)).  Here, the discrepancies between Plaintiff's assertions and the objective medical evidence, and between Dr. Younes's assessment and the objective medical evidence, all provide adequate bases for discounting their respective testimony and opinion.  I agree that, even if Plaintiff failed to seek additional treatment for financial reasons, the ALJ was still well within his authority to find a lack of substantial evidence for the conclusion

which Plaintiff urges here.  The ALJ's conclusions are supported by substantial

evidence, and, thus, the standard of review requires affirmance on this issue.

> **3.     The Commissioner did not fail to establish that there is
> other work in the national economy that Plaintiff could
> perform.**

>> **a.     The VE's testimony does not conflict with the
>> Dictionary of Occupational Titles (DOT).**

The ALJ's Step 4 RFC finding contained the limitation, "no jobs involving

*concentration* on detailed or precision tasks or multi-tasking, *reading*,

computing/calculating, or problem solving[.]"  (R. at 25-26.) (emphasis added).

Plaintiff argues that the VE's testimony is not consistent with the DOT, because

"the VE's testimony that an individual who cannot read and is limited to jobs not

involving detail or precision tasks is inconsistent with the DOT's description of the

jobs of office machine operator, mail clerk, and records clerk."  (DE 15 at 15.)

By way of background, the DOT provides that the photocopying-machine

operator job (DICOT 207.685-014) involves Level 1 reading, while the mail clerk

job (DICOT 209.687-026) and router job (DICOT 222.587-038) involve Level 2

reading.  (DE 15-1 at 1, DE 15-2 at 2, DE 15-3 at 1.)  Moreover, the mail clerk job

involves "[a]ttaining precise set limits, TOLERANCES, and standards[.]"  (DE 15-

2 at 3.)

Here, Plaintiff refers to SSR 00-4p ("Use Of Vocational Expert And

Vocational Specialist Evidence, And Other Reliable Occupational Information In

Disability Decisions"), which, in part, provides:  "When vocational evidence provided by a VE or VS is not consistent with information in the DOT, the adjudicator must resolve this conflict before relying on the VE or VS evidence to support a determination or decision that the individual is or is not disabled. The adjudicator will explain in the determination or decision how he or she resolved the conflict. The adjudicator must explain the resolution of the conflict irrespective of how the conflict was identified."  (DE 15 at 15-16.)

However, I agree with the Commissioner that "the ALJ's RFC determination cannot be sensibly interpreted as stating that Plaintiff is completely unable to read."  (DE 16 at 16.)  The limitation at issue states, "no jobs involving *concentration* on detailed or precision tasks or multi-tasking, *reading*, computing/calculating, or problem solving[.]"  (R. at 26 (emphases added).)  It seems to the Court that the word "concentration" modifies everything which follows it. Thus, it appears that the ALJ intended to limit Plaintiff from jobs which "concentrate" on reading, not all those which "require some level" of it, regardless of how minuscule.  (R. at 25-26.)  This interpretation is buttressed by the fact that the only mention of reading in the ALJ's decision is in the two descriptions of the RFC.  (*See* R. at 26, 28.)

This interpretation is also buttressed by the ALJ's finding that Plaintiff has at least a high school education.  (R. at 29.)   "High school education and above

27

means abilities in reasoning, arithmetic, and language skills acquired through formal schooling at a 12th grade level or above. We generally consider that someone with these educational abilities can do semi-skilled through skilled work." 20 C.F.R. §§ 404.1564(b)(4), 416.964(b)(4). Moreover, the Plaintiff testified that he completed a two year college (R. at 41), and the May 25, 2012 adult mental status evaluation states, "The claimant graduated from the 12th grade in Lebanon in regular education. He attended college in Cleveland for three years." (R. at 225.) Thus, there is substantial evidence that the ALJ did not find that Plaintiff was completely unable to read.

### b.   The ALJ's hypothetical to the VE included all of the limitations supported by the record.

Plaintiff claims that the ALJ's hypothetical question to the VE did not accurately portray: Plaintiff's limitations, specifically Dr. Younes's limitations (standing, walking, lifting, resting, likely missing work one to two days per week); Plaintiff's social/mental limitations (moderate difficulties in social functioning, unskilled work with limited social interactions); and, Plaintiff's credibility testimony. (DE 15 at 14, 16-18.)

Plaintiff's RFC is "the most [he or she] can still do despite the physical and mental limitations resulting from [his or] her impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. §§ 404.1545(a), 416.945(a). The determination of Plaintiff's RFC is an issue reserved to the

Commissioner and must be supported by substantial evidence.  20 C.F.R. §§ 404.1527(3), 416.927(e).  "'ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.'"  *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)).

> Pursuant to Social Security Rule 96-8p, the RFC assessment *must* include:

> [A] narrative discussion describing how the evidence supports each conclusion, citing **specific** medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).  In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. *The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.*

S.S.R. 96-8p, 1996 WL 374184, at *6-7 (July 2, 1996) (emphasis added).

The Court should conclude that Plaintiff has not demonstrated that the ALJ omitted any significant physical or mental limitations from the residual functional capacity (RFC) finding.  To the extent Plaintiff here contests the ALJ's failure to include Dr. Younes's functional limitations as to standing, walking, lifting, resting and likelihood of missing work one to two days per week (DE 15 at 16), this report has earlier recommended a finding that the ALJ did provide "good reasons" for rejecting the lifting, sitting, standing and walking limitations assessed by Dr.

Younes.  Accordingly, the ALJ was permitted to refrain from adopting the VE's

answers to Plaintiff's counsel's lifting, walking and/or standing hypotheticals.  (R.

at 55-56.)

Likewise, to the extent Plaintiff here contests the ALJ's failure to include his

pain and fatigue limitations (DE 15 at 18), this report has elsewhere recommended

that the ALJ properly discounted Plaintiff's credibility.  The ALJ did not have to

adopt the VE's answer to Plaintiff's counsel's off-task, punctuality and/or

absenteeism hypotheticals.  (R. at 54-55.)

Finally, to the extent Plaintiff contests the ALJ's failure to include his

alleged social/mental limitations, the non-exertional limitations in the RFC are

supported by substantial evidence.  As noted earlier, ALJ Blair's Step 4 RFC

determination included limitations for "simple unskilled work with an SVP rating

of 1 or 2; work involving one-, two-, or three-step instructions; no jobs involving

concentration on detailed or precision tasks or multi-tasking, reading,

computing/calculating, or problem solving; and work requiring only brief and

superficial contact with the public." R. at 25-26.  In arriving at his RFC

determination, the ALJ considered several records, such as:

- the May 25, 2012 Adult Mental Status Evaluation by
  Jeter/Bray, which notes that Plaintiff was cooperative and had
  good eye contact (R. at 225) and "has no difficulty
  comprehending simple directions[,]" (R. at 226)

- the September 13, 2012 Psychiatric Evaluation by Mendiratta
  (R. at 228-231), which documents normal progression,
  language and perception, appropriate attire, unremarkable facial
  expression and "immediate" memory (R. at 230)

- Plaintiff's April 19, 2012 Function Report, which notes he gets
  along with authority figures "very well" (R. at 178)

*See* R. at 24, 27-29.

Moreover, although not expressly cited in the ALJ's decision, the record

includes the June 14, 2012 determination by Dr. Zahra Khademian, M.D., that

Plaintiff had non-severe affective disorders.  (R. at 62-63.).  *See Kornecky v.*

*Commissioner of Social Security,* 167 F.App'x 496, 507-508 (6th Cir. 2006)

("While it might be ideal for an ALJ to articulate his reasons for crediting or

discrediting each medical opinion, it is well settled that:  '[a]n ALJ can consider all

the evidence without directly addressing in his written decision every piece of

evidence submitted by a party. Nor must an ALJ make explicit credibility findings

as to each bit of conflicting testimony, so long as his factual findings as a whole

show that he implicitly resolved such conflicts.'") (quoting *Loral Defense*

*Systems–Akron v. N.L.R.B.,* 200 F.3d 436, 453 (6th Cir.1999)).

Furthermore, the ALJ specifically noted the consultative psychological

examiners' May 25, 2012 evaluation that Plaintiff's GAF score was 58.  (R. at 29,

227.)  GAF scores in the mid-50s are consistent with a conclusion that Plaintiff has

the mental capacity to hold at least some jobs. *Smith v. Commissioner of Social*

*Sec.*, 482 F.3d 873, 877 (6th Cir. 2007) ("Even assuming GAF scores are

determinative, the record supports a GAF in the high 40s to mid 50s, which would

not preclude her from having the mental capacity to hold at least some jobs in the

national economy.").[8]

     Therefore, to the extent Plaintiff argues that the mental health evidence

"would impact his ability to relate to supervisors and co-workers . . .[,]" in addition

to his "ability to interact with the public," and that the ALJ's hypothetical "should

have included a limitation in the ability to relate to co-workers and supervisors[,]"

(DE 15 at 17-18), the ALJ has adequately addressed Plaintiff's social, mental and

non-exertional limitations. As discussed above, the ALJ's light work RFC finding

included several related limitations, and the ALJ's assessment of Plaintiff's non-

exertional limitations is supported by substantial evidence. In the end, it is the

---

[8] The GAF scale was used to report a clinician's judgment of an individual's overall level of functioning. Clinicians selected a specific GAF score within the ten-point range by evaluating whether the individual was functioning at the higher or lower end of the range. *See* American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 33–34 (American Psychiatric Association, 4th ed. text rev. 2000) (DSM-IV-TR). "Individuals with scores of 51–60 are classified as having 'moderate symptoms ... or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).'" *Byrne v. Astrue*, No. 3:11CV00353, 2012 WL 5988639, at *4 n.5 (S.D. Ohio Nov. 29, 2012) (report and recommendation of Ovington, M.J.) (quoting DSM–IV–TR at 34). However, "the most recent version of the DSM does not include a GAF rating for assessment of mental disorders." *Bryce v. Comm'r of Soc. Sec.*, No. 12-CV-14618, 2014 WL 1328277, at *10 (E.D. Mich. Mar. 28, 2014).

claimant's burden to prove his or her RFC.  *See* 20 C.F.R. § 416.912(a);[9] *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001).  It is not this Court's role to reject the ALJ's findings, even if it might have reached a different conclusion had it served as the trier of fact in the first instance.  *Braden v. Secretary of Health & Human Services*, No. 90-3028, 1990 WL 177211, 2 (6th Cir. Nov. 14, 1990) ("If the administrative decision is supported by substantial evidence, it must be affirmed even if the court as trier of fact would have arrived at a different conclusion.") (citing *Elkins v. Secretary of Health and Human Services,* 658 F.2d 437, 439 (6th Cir.1981)).

### 4. The ALJ did not commit reversible error in failing to address Mr. Hassan's "borderline age" in his decision.

Plaintiff's final statement of error concerns the ALJ's alleged failure to address Plaintiff's "borderline age."  (DE 15 at 18-23.)  By way of background, the ALJ found that Plaintiff, "was born on June 13, 1958 and was 51 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date [of April 1, 2010][.]"  (R. at 29; *see also* 20 C.F.R. §§ 404.1563(d), 416.963(d) ("If you are closely approaching advanced age (age 50–54), we will consider that your age along with a severe impairment(s) and limited work experience may seriously affect your ability to adjust to other work.").)

---

[9] "In general, you have to prove to us that you are blind or disabled."  20 C.F.R. 416.912(a).

However, at the time of the April 30, 2013 hearing, Plaintiff was 54 years old.  (R. at 41.)  Moreover, by the time of the ALJ's June 5, 2013 decision, Plaintiff was just eight days shy of turning 55 years old, at which time he would be considered a "person of advanced age."  20 C.F.R. §§ 404.1563(e), 416.963(e) ("We consider that at advanced age (age 55 or older), age significantly affects a person's ability to adjust to other work. We have special rules for persons of advanced age and for persons in this category who are closely approaching retirement age (age 60 or older).").

Here, Plaintiff argues that ALJ Blair committed reversible error in failing to address Plaintiff's "borderline age" in his decision as required.  (DE 15 at 18-23.). The Social Security Administration provides some guidance on application of the age categories:

> When we make a finding about your ability to do other work under § 404.1520(f)(1), we will use the age categories in paragraphs (c) through (e) of this section. We will use each of the age categories that applies to you during the period for which we must determine if you are disabled. *We will not apply the age categories mechanically in a borderline situation. If you are within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled, we will consider whether to use the older age category after evaluating the overall impact of all the factors of your case.*

20 C.F.R. §§ 404.1563(b), 416.963(b) (emphasis added).  Plaintiff asserts that, applying the "advanced age" category, he would be found disabled under 20 C.F.R., Part 404, Subpt. P, App. 2 § 202.06.  (DE 15 at 19, 21.)

34

The Commissioner agrees that this case presents a borderline age situation, but also takes the position that Plaintiff "has not established that 'additional adversities' justify the use of the higher age category." (DE 16 at 18.) Here, the Social Security Administration's Hearings, Appeals, and Litigation Law Manual (HALLEX) provides some guidance on applying the medical-vocational guidelines in borderline age situations. If a borderline situation exists:

> . . . the adjudicator must decide whether it is more appropriate to use the higher age or the claimant's chronological age. (Use of the higher age category is not automatic.) To decide which age category to use, take a "sliding scale" approach. Under this approach, *the claimant must show* progressively more additional vocational adversity(ies) — to support use of the higher age — as the time period between the claimant's actual age and his or her attainment of the next higher age category lengthens.
>
> One finds additional vocational adversity(ies) if some adjudicative factor(s) is relatively more adverse when considered in terms of that factor's stated criteria, or when there is an additional element(s) which has adverse vocational implications. ***Examples of these additional vocational adversities are the presence of an additional impairment(s) which infringes upon—without substantially narrowing—a claimant's remaining occupational base; or the claimant may be barely literate in English, have only a marginal ability to communicate in English, or have a history of work experience in an unskilled job(s) in one isolated industry or work setting.*** (An isolated industry would be such as fishing or forestry.) Other adverse circumstances in individual cases may justify using the higher age category.
>
> Absent a showing of additional adversity(ies) justifying use of the higher age category, the adjudicator will use the claimant's chronological age — even when the time period is only a few days. The adjudicator need not explain his or her use of the claimant's chronological age.

HALLEX, II-5-3-2 (emphases added).

The Court should find that the ALJ did not err in assessing Plaintiff by his chronological age or in refraining from express comment on Plaintiff's borderline age situation.  (R. at 29.).  Plaintiff testified that he completed two years of college, and the VE classified his past work as an automobile salesperson as skilled with an SVP of 6.  (R. at 41, 53.)  Also, the ALJ recognized that Plaintiff "has at least a high school education and is able to communicate in English[.]"  (R. at 29, *see also* 20 C.F.R. §§ 404.1564(4),(5), 416.964(4),(5).)  Thus, guided by HALLEX, II-5-3-2, Plaintiff does not have the additional vocational adversities of barely literate in English, marginally able to communicate in English, or unskilled work history.

Plaintiff further directs the Court's attention to SSA's Program Operations Manual System (POMS) DI 25015.005 ("Age as a Vocational Factor."), Subsection (D) of which concerns "[w]hen to use the next higher age category in a borderline age situation[.]"  "Examples of mental limitations that could be considered additional vocational adversities include moderate limitations in:

- Understanding and memory, such as the inability to understand and remember detailed instructions
- Sustained concentration and persistence, such as the inability to maintain attention and concentration for extended periods
- Social interaction, such as the inability to interact appropriately with the general public
- Adaptation, such as the inability to travel in unfamiliar places or use public transportation; see DI 25020.010.

(POMS) DI 25015.005(D)(2).  Plaintiff contends he has additional vocational adversities, based upon the ALJ's:  Step 2 finding of a severe impairment of

adjustment disorder with depressed mood (R. at 23); Step 3 findings of moderate

difficulties with social functioning and with regard to concentration, persistence or

pace (R. at 24); Step 4 RFC limitations of "no jobs involving concentration on

detailed or precision tasks . . ." and "work requiring only brief and superficial

contact with the public[,]" (R. at 25-26); and, Step V observation that Plaintiff's

"ability to perform all or substantially all of the requirements of this level of work

has been impeded by additional limitations[,]" (R. at 30).

However, the mental RFC restrictions to which Plaintiff points – "no jobs

involving concentration on detailed or precision tasks or multi-tasking, reading,

computing/calculating, or problem solving[,]" and "work requiring only brief and

superficial contact with the public[,]" (DE 15 at 22, R. at 25-26) – do not alone

require remand when the ALJ has failed to expressly discuss a "borderline age

situation."  *Caudill v. Commissioner of Social Security*, 424 F.App'x 510, 513,

516-518 (6th Cir. 2011) (concluding that "[t]he ALJ properly categorized Caudill as

an individual 'closely approaching advanced age' rather than a person of

'advanced age[,]'" even though the ALJ found that Plaintiff "has poor ability to

understand, remember and carry out complex job instructions. He has fair ability to

understand, remember and carry out detailed but not complex job instructions.");

*Bowie v. Commissioner of Social Security*, 539 F.3d 395, 396, 401 (6th Cir. 2008)

(where the ALJ found that Bowie was "capable of performing unskilled sedentary

exertional work[,]" but "unable to perform any of her past relevant work as an assembler in the automobile industry[,]" the Court still "did not find problematic the ALJ's failure to explain her age-categorization reasoning because the ALJ's reasons were apparent from the record.").  Here, the ALJ noted that the consultative psychological examiners found that Plaintiff "has no difficulty comprehending simple directions," and "displayed significant cognitive strengths in memory, attention, and concentration."  (R. at 28.)  The ALJ also observed that the consultative examiners "failed to identify any limitations in the claimant's ability to tolerate workplace social interactions."  (R. at 29.)

Moreover, the ALJ was not required to explain his or her use of Plaintiff's chronological age.  *See* HALLEX, II-5-3-2.  As the Sixth Circuit has noted, "Although an ALJ does not have a procedural obligation to address a claimant's borderline age situation in his opinion or explain his reasons or arriving at a particular age categorization, lack of an explanation may in some cases mean that the ALJ's ultimate decision is not supported by sufficient evidence."  *Bowie*, 539 F.3d at 401.  However, in Plaintiff's case, the record does not support a conclusion that Plaintiff cannot read and write in English, his past relevant work is skilled, and, as discussed above, the ALJ already accounted for Plaintiff's *moderate difficulties* in social functioning and concentration, persistence or pace.  Moreover, at Step 5, the ALJ relied on the VE's testimony (R. at 30.), and, as previously

38

noted, the ALJ's hypothetical to the VE included all of the limitations supported by the record.  Furthermore, Plaintiff has not demonstrated "other adverse circumstances" justifying use of the higher age category in HALLEX, II-5-3-2. For these reasons, the Court need not remand this case to "address Mr. Hassan's borderline age[.]"  (DE 15 at 23.)

### G.    Conclusion

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Accordingly, it is **RECOMMENDED** that the Court **DEEM MOOT** Plaintiff's motion for summary judgment (DE 14), **DENY** Plaintiff's amended motion for summary judgment (DE 15), **GRANT** Defendant's motion for summary judgment (DE 16), and **AFFIRM** the Commissioner of Social Security's decision.

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: December 7, 2015          s/Anthony P. Patti
                                 Anthony P. Patti
                                 UNITED STATES MAGISTRATE JUDGE

I hereby certify that a copy of the forgoing document was sent to parties of record on December 7, 2015, electronically and/or by U.S. Mail.

                                 s/ Michael Williams
                                 Case Manager for the
                                 Honorable Anthony P. Patti